UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PATRICIA A. HOWARD,

                    Plaintiff,

-vs-                                        Case No.  6:04-cv-882-Orl-JGG

JO ANNE B. BARNHART,
Commissioner of Social Security,

                    Defendant.

_____

## MEMORANDUM OF DECISION

Plaintiff Patricia A. Howard ["Howard"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying her application for a period of disability and disability income benefits.  *See* Docket No. 1 (complaint).  For the reasons set forth below, the Commissioner's (Appeals Council's) final decision is **REVERSED and REMANDED**.

## I.    PROCEDURAL HISTORY

On July 2, 2001, Howard filed a claim for disability insurance benefits, claiming disability as of May 8, 2001.  R. 45-47.  On June 3, 2003, the Honorable Albert D. Tutera, Administrative Law Judge ["ALJ"], held a hearing on Howard's claim in Orlando, Florida.  R. 224-52.  Howard testified, and her attorney, James Keeter, appeared with her at the hearing.

On June 23, 2003, the ALJ ruled that Howard was not entitled to benefits.  R. 12-20. Following a review of the medical and other record evidence, the ALJ found that Howard had severe impairments, but did not have an impairment or combination of impairments that met or equaled a listed impairment.  R. 19, Findings 3-4.  The ALJ also found that Howard's testimony regarding her

limitations was not totally credible.  R. 19, Finding 5.  Further, the ALJ determined that Howard retained the RFC to perform a full range of medium work.[1]  R. 19, Finding 7.  The ALJ concluded that Howard's past relevant work was not precluded by her RFC, and therefore, found her not disabled R. 19, Findings 8-10.

Howard timely appealed the ALJ's decision to the Appeals Council ["AC"].  R. 10-11. Finding no error or abuse of discretion, the AC denied review on April 2, 2004.  R. 2-5.  On June 8, 2004, Howard timely appealed the AC's decision to the United States District Court for the Middle District of Florida.  Docket No. 1.  On November 18, 2004, Howard filed a memorandum of law in support of her appeal of the denial of review.[2]  Docket No. 14.  On January 18, 2005, the Commissioner filed a memorandum in support of her decision that Howard was not disabled.  Docket No. 15.  The appeal is ripe for determination.

## II.    THE PARTIES' POSITIONS

Howard does not allege any error in the ALJ's decision.  Instead, her sole argument is that the AC failed to consider new evidence submitted to the AC after the ALJ's decision.  Pltf.'s Brief at 12-14.  The Commissioner responds that: 1.) the AC properly considered the newly submitted evidence; 2.) evidence that post-dated the ALJ's decision did not relate to the relevant period under consideration before the ALJ; and 3.) the newly submitted evidence was not material, and Howard failed to demonstrate good cause for its late submission.   Def.'s Brief at 5-17.

---

[1]"Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  20 C.F.R. § 416.967(c).

[2]Howard failed to sign her initial memorandum.  After the Court entered a show cause order, Howard signed and re-filed her memorandum on March 7, 2005.  *See* Docket Nos. 14, 16-19.

III.   **THE STANDARD OF REVIEW**

A.   **Affirmance**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

B.   **Reversal and Remand**

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a

-3-

Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984).

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ

-4-

to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment).   On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).   After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405 (g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405 (g).

To remand under sentence six, the claimant must establish:  1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090 - 92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also Keeton v. Dept. of Health and Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095. With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. *Id*.

**C.      Standard of Review for Evidence Evaluated by Appeals Council**

After the ALJ's decision — but before the Appeals Council's decision — Howard submitted additional medical records covering a period from December 5, 2002 through July 10, 2003. R. 1A, 204-23. The Appeals Council made them a part of the record, but did not properly consider them in denying review.[3] R. 5. The district court must consider the new evidence in determining whether the Commissioner erred in denying review of the ALJ's decision.

Congress left the term "final decision" undefined in 42 U.S.C. § 405 (g). Where a claimant exhausts his administrative remedies by requesting review by the Appeals Council and the Appeals Council then denies review, the Appeals Council's order denying review is a "final decision" of the Commissioner under § 405 (g). *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 2083 (2000); *accord Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Appeals Council "will" review a case if there appears to be an abuse of discretion by the ALJ, if there is an error of law, or if the ALJ's action, findings, or conclusions are not supported by substantial evidence. 20 C.F.R. § 416.1470; *Sims*, 120 S.Ct. at 2086; *see also, Parker v. Bowen*, 788 F.2d 1512, 1518 (11th Cir. 1986)

---

[3]*See* Analysis, part V (B), *infra*.

-6-

(en banc). The Appeals Council's denial of review is subject to judicial review to determine if it is supported by substantial evidence. *Sims*, 120 S.Ct. at 2086.

Just as the ALJ has a duty to investigate the facts and to develop the arguments both for and against the granting of benefits, the Appeals Council's review is similarly broad. *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 2085 (2000). The Appeals Council, not the claimant, has the primary responsibility for identifying and developing the issues. *Sims*, 120 S.Ct. at 2086. When the Appeals Council refuses to consider new evidence submitted to it and denies review, the Appeals Council's decision denying review is subject to judicial review. 20 C.F.R. § § 404.970 (b); 416.1470 (b); *Sims*, 120 S.Ct. at 2086; *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994). Furthermore, the Appeals Council commits reversible error when it refuses to consider new evidence and then denies review. *Keeton*, 21 F.3d at 1066. Similarly, it is *reversible error* for a district court to consider only the evidence presented to the ALJ — and to ignore the new evidence presented to the Appeals Council — in reviewing a decision of the Appeals Council. *Keeton*, 21 F.3d at 1066.

The Appeals Council must consider and evaluate new evidence to determine whether there is a basis for changing the ALJ's decision. *Sims*, 120 S.Ct. at 2086; *Falge v. Apfel*, 150 F.3d 1320, 1322 n. 4 (11th Cir. 1998). When the Appeals Council has denied review, the district court looks only to the evidence actually presented to the ALJ in determining whether the *ALJ's decision* is supported by substantial evidence. *Falge*, 150 F.3d at 1323; *accord, Eads v. Secretary of Health and Human Services*, 983 F.2d 815, 817 (7th Cir. 1993) (ALJ cannot be faulted for failure to weigh evidence never presented to him).

-7-

Nevertheless, there is an important difference between *Falge* and this case — a difference stressed by the United States Court of Appeals for the Eleventh Circuit. In *Falge*, the claimant did not appeal the Appeals Council's decision to deny review. Instead he appealed only the *ALJ's decision* to deny benefits. 150 F.3d at 1324. In this case, however, the claimant does expressly appeal and seek a reversal of the Appeals Council's decision to deny review. Docket No. 1 at 1, ¶ 2. The Eleventh Circuit directs the district courts to consider evidence submitted to the Appeals Council (if any) in reviewing the Appeals Council's denial of review. *Falge*, 150 F.3d at 1324; *Keeton*, 21 F.3d at 1066.

Indeed, it makes sense that Congress has provided for judicial review of the Commissioner's final decision — the last step of review necessary to exhaust administrative remedies. When the Appeals Council refuses to consider new evidence submitted to it, the Appeals Council's decision denying review is subject to judicial review for error. *Sims*, 120 S.Ct. at 2086; *Keeton*, 21 F.3d at 1066. Similarly, when the Appeals Council denies review of an ALJ's decision after receiving, considering, and evaluating new and material evidence that clearly and thoroughly undermines the ALJ's findings of fact and conclusions of law, the Appeals Council's decision denying review also must be subject to judicial review for error. *See Falge*, 150 F.3d at 1324; *Keeton*, 21 F.3d at 1066, 1068; 20 C.F.R. § 404.970 (b) (Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the relevant period, and it will then review the case if it finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record). The Commissioner cannot avoid judicial review of the Appeals Council's decision to deny review by considering but not acting on new evidence that is highly probative of disability, or by

considering but not acting on evidence that shows in retrospect that an ALJ's action, findings, or conclusion are contrary to the weight of the evidence currently of record.

In this case, the claimant has appealed an unfavorable decision to the Appeals Council as a necessary step in exhausting her administrative remedies.  Although the Appeals Council has not properly considered claimant's additional evidence in light of the issues raised in the request for review, it has considered the applicable statutes and regulations, has considered the ALJ's decision, and has issued a written final decision determining that the ALJ neither erred nor abused his discretion, and determining that the ALJ's findings are supported by substantial evidence.  The Appeals Council's determination is subject to judicial review.  The Commissioner's regulation defining the term "final decision of the Commissioner of Social Security" in 42 U.S.C. § 405 (g) as the decision of the ALJ, and by calling the Appeals Council's final decision a "denial of review," does not have the effect of avoiding judicial review of the Appeals Council's decisions. *See Sims*, 120 S.Ct. at 2086; *accord Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (Appeals Council's denial of review was a judicially reviewable final decision under 42 U.S.C. § 405 (g)).

## IV.   THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (i), 423 (d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

### A.     Treating Physicians

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v.* Callahan, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); *Sabo v. Commissioner of Social Security*, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527 (d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527 (d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.) consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (d). However, a treating physician's opinion is generally

-10-

entitled to more weight than a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also* 20 C.F.R. § 404.1527 (d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527 (e).   The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner.  20 C.F.R. § 404.1527 (e).

**B.   Developing the Record**

The ALJ has a duty to fully and fairly develop the record.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right.  *See* 42 U.S.C.§ 406; *Cowart*, 662 F.2d at 734.  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  *See Cowart*, 662 F.2d at 735 - 36.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  *See Howard v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982). This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and

-11-

explore for all the relevant facts" and to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Cowart*, 662 F.2d at 735 (citations omitted).

### C.    **Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also Conley v. Bowmen*, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (failure to order such an evaluation may be reversible error).  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  20 C.F.R. § 416.917 (1998).

### D.    **The Five Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  *See* 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520 (b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his or her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520 (©).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520 (d).  Fourth, if a claimant's impairments do not prevent him or her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520 (e).  Fifth, if a claimant's

-12-

impairments (considering his or her residual functional capacity, age, education, and past work) prevent him or her from doing other work that exists in the national economy, then claimant is disabled.  20 C.F.R. § 404.1520 (f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423 (d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *See id.*, 985 F.2d at 534.

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  The claimant must prove disability on or before the last day of his or  her insured status for the purposes of disability benefits. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979); 42 U.S.C. §§ 416 (i)(3); 423(a), ©).  If a claimant becomes disabled after the claimant has lost insured status, his or her claim for disability benefits must be denied despite the disability. *See, e. g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973); *Chance v. Califano*, 574 F.2d 274 (5th Cir. 1978).

E.     **Other Work**

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote,* 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert). It is only when the claimant can clearly do unlimited types of

-14-

work at a given residual functional level that it is unnecessary to call a vocational expert to establish

whether the claimant can perform work which exists in the national economy.  *See Allen v. Sullivan*,

880 F.2d 1200, 1202 (11th Cir. 1989); *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981).  In

any event, the ALJ must make a specific finding as to whether the non-exertional limitations are

severe enough to preclude a wide range of employment at the given work capacity level indicated by

the exertional limitations.  *Foote*, 67 F.3d at 1559.

### 1.   Pain

Pain is a non-exertional impairment.  *Foote*, 67 F.3d at 1559; 826 F.2d at 1003.  Congress has

determined that a claimant will not be considered disabled unless he furnishes medical and other

evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment

which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423

(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain,

and determine the extent to which the symptoms can reasonably be accepted as consistent with the

objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and

laboratory findings show medical impairments which reasonably could be expected to produce the

pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either
> (2) objective medical evidence that confirms the severity of the alleged pain arising
> from that condition or (3) that the objectively determined medical condition is of such
> a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain alone

can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*,

-15-

957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423 (d)(5)(A).

## 2.  **Credibility**

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote,* 67 F.3d at 1561-62*; Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  *Foote,* 67 F.3d at 1561-62*; Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  *See Smallwood v. Schweiker*, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983) (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

V.      **APPLICATION AND ANALYSIS**

   A.      **The Facts**

Born on September 12, 1954, Howard was forty-eight years old at the time of the ALJ's decision.[4]  R. 45.  Howard has a high-school equivalent education, and her past relevant work experience includes work as a training analyst.  R. 55, 60.  Howard claims an inability to work beginning May 8, 2001.  R. 45.

On September 11, 2000, Howard went to the Newman Family Medicine Group for complaints of fatigue and dizziness.  R. 98.  On September 22, 2000, she complained of left knee pain after falling down stairs at home.  R. 96.  On November 29, 2000, Howard underwent a left knee orthopaedic examination by Dr. John Chase.  He diagnosed her condition to be either patellofemoral pain and/or a meniscal tear.  R. 89.

On March 20, 2001, Howard complained of intermittent vertigo and dizziness for the past four to five months.  R. 94.  On March 29, 2001, Dr. Thomas O. Steedle conducted a neuro-opthalmologic examination.  Howard complained of vertigo, light-headedness, blurring of vision lasting 45 minutes, and headaches. Dr. Steedle's examination was inconclusive, but he noted her prior acoustic neuroma and determined that her headaches were not of ocular origin.  R. 91.

On March 22, 2001, Howard underwent a cranial MRI.  The radiologist, Dr. Richard J. Bagby, concluded that she had a normal cranial MRI, but also noticed a subtle increase enhancement of the right eighth nerve root in the internal auditory canal.  Dr. Bagby referenced Howard's prior acoustic

---

[4] She is now fifty years old.

neuroma surgery in 1990, noted her symptoms of dizziness, fainting and ear fullness, and opined that her current and previous MRIs should be compared as to her cerebellar pontine angles.  R. 99, 100.

On March 30, 2001, Howard underwent a neurosurgical consult with MRI films to rule out a recurrent acoustic neuroma.  She was evaluated by Dr. St. Louis, a neurosurgeon, who discussed with her a Gamma-knife procedure.   R. 92-93.  On April 16, 2001, Howard underwent a neurological examination by James S. Atkins, M.D.  Although he noted that she was negative for seizures, severe headaches, and problems with remembering, she was positive for nausea, dizziness and imbalance, and tiredness.  His impression was of a recurrent neuroma on the right side.  R. 144-46.

On April 20, 2001, Howard was examined by Max Medary, M.D., a neurosurgeon.  Dr. Medary noted that she harbored "a vestibular schwannoma involving the right internal auditory canal . . . [that] extends from the cerebellar pontine angle to just before the labyrinth segment of the internal auditory canal."  A neurosurgical course was chosen instead of the Gamma-knife procedure.  R. 116.

On May 8, 2001, Howard underwent surgery by Dr. Medary, assisted by James S. Atkins, M.D., to remove the right vestibular schwannoma.  Post-operatively, the schwannoma was determined to be of the right facial nerve.  R. 107.  Because her family did not want to risk facial paralysis, the tumor portion involved with her right facial nerve was not resected.  R. 103, 104.  Howard continued to have post-operative problems with dizziness, imbalance, and nausea.  She also developed headaches.  On June 1, 2001, Dr. Medary noted that "Howard has been having persistent headaches, but particularly exacerbation of her vertigo.  She still has some episodes of nausea and vomiting."  R. 113.

On June 8, 2001, Howard complained of sharp pain on the right side of her head, sleeplessness, loss of balance with quick movements or turning, and constant dizziness. R. 138, 139. After a June 13, 2001 physical therapy session, Howard experienced increased pain with nausea and vomiting. On July 25, 2001, the physical therapist further noted that Howard experienced pressure, tightness and pain in the right occipital area and posterior cranium, as well as constant dizziness and intermittent loss of balance. R. 134-35. Although physical therapy resulted in some improvement in her symptoms, Howard still experienced constant dizziness. R. 126-130.

On July 12, 2001, Dr. Atkins recommended Neptazane 50 mg q d to reduce inner ear edema. On October 12, 2001, Dr. Atkins noted that she experienced decreased hearing with continued imbalance, and with shock and "electrical" sensations in her arms and legs. R. 141-42. A July 25, 2001 physical therapy note stated that Howard ambulated using gaze fixation strategy, transfers, position changes, and slow and cautious breed movements. R. 135. On August 20, 2001 and November 19, 2001, non-examining medical reviewers noted in RFC assessments that Howard's symptoms were partially credible, and consistent and credible, respectively. R. 166, 174. However, the reviewers noted that there were no treating or examining source statements in her file regarding Howard's physical capacities. R. 167, 175. The reviewers did not determine any limitations based upon her imbalance, dizziness, and nausea symptoms.

On November 1, 2001, Dr. Atkins conducted vestibular function testing. R. 147-159. The testing showed a complete right unilateral weakness. On July 16, 2001, Dr. Medary noted that "her vestibular rehabilitation is progressing slowly," and he recommended a repeat MRI in six months. R. 111. The initial assessment of June 8, 2001 also noted that Howard complained of right hearing loss;

right involuntary upper extremity movements, constant 10/10 pain in the cervical area, home health aide assistance times one secondary to loss of balance, and loss of balance with head turning or quick movements.  She was found to have functional deficits in ADLs, leisure activities and with mobility. R. 136.

On November 27, 2001, Howard described experiencing dizziness with any type of movement, such as washing her face.  On December 3, 2001, Dr. Atkins confirmed Howard's positional vertigo with significant right gaze nystagmus, and he recommended that she undergo home therapy.  On January 21, 2002, Howard returned to Dr. Atkins and complained of dizziness, nausea, and poor balance.  Dr. Atkins prescribed Phenergan, 25 mg, for her nausea.  R. 190-91.

On February 28, 2002, Dr. Atkins noted that Howard continued to have significant problems with balance and headaches.  On April 8, 2002, Dr. Atkins noted that Howard's headaches and balance had worsened.  At that time, Dr. Atkins wanted to obtain another MRI to determine whether or not her acoustic neuroma had enlarged. On April 26, 2002, Dr. Atkins injected her with Kenalog at the surgical incision line and inserted a Silverstein microwick, with Gentamicin, in her inner ear.  R. 184-86.

By May 7, 2002, Howard had noticed some balance improvement and a pain reduction in the incision line.  By July 18, 2002, Dr. Atkins noted that Howard's imbalance and occipital pain remained problematic.  He prescribed Vioxx, 12.5 mg, for chronic inflammatory disease in her mastoid area.  On October 3, 2002, Dr. Atkins noted her continued problems with anxiety, imbalance, and disequilibrium.  He wanted to switch her medication to Neurontin, 100 mg, and also gave her a Zoloft sample.  R. 180-83.

-20-

On December 5, 2002, Dr. Atkins further noted her imbalance problems and occipital pain and referred her to pain management at Florida Hospital Pain Management Center.  R. 179, 201.  On December 16, 2002, Howard underwent an MRI of the brain.  The impression was post-surgical changes to the right posterior fossa and continued paranasal sinus disease in the left maxillary sinus. R. 177.

From December 28, 2002 through January 27, 2003, Howard underwent pain management physical therapy at Florida Hospital.  The physical therapy discharge report of February 14, 2003, noted that Howard demonstrated increased flexibility and strength, although her pain persisted and she continued to hold her head to the right of midline with a decrease in her right shoulder elevation. R. 192-200.  Howard continued to treat with Dr. Atkins for dizziness, imbalance, nausea, headaches, and occipital pain. On April 10, 2003, he noted that her balance was still bad, and she had continued occipital pain and twitching in the facial nerve.  R. 215.

On July 10, 2003, Dr. Atkins completed a physical RFC form and a vestibular dysfunction RFC form.  R. 210-213, 205-209.  In the vestibular dysfunction RFC form, Dr. Atkins concluded that Howard would have more than four bad days per month that would require her to be absent from work.  R. 209.  In the physical RFC form, Dr. Atkins concluded that Howard was disabled.  R. 212.

## B.    The Analysis

Howard submitted to the AC additional medical evidence comprising: 1.) vestibular dysfunction RFC and physical RFC assessments dated July 10, 2003 (about 17 days after the ALJ's June 23, 2003 decision); and 2.) three medical treatment records dated December 5, 2002, April 10, 2003, and July 10, 2003.  The AC properly made the additional evidence a part of the record, and

-21-

properly acknowledged that it considered the evidence in denying review.  R. 2, 5.  The AC erred, however, in determining that the Appeals Council evidence did not warrant a review of the ALJ's decision or a change in the ALJ's decision.  R. 2 - 3.

The evidence before the ALJ at the time of his decision established that Howard had surgery in May 2001 for a tumor in the inner ear.  During surgery, however, Howard's surgeon discovered that the tumor was attached to a facial nerve and was inoperable (absent paralysis).  Howard also had hearing loss, dizziness, and imbalance associated with the tumor.  Howard's surgeon and primary treating physician, Dr. Atkins, treated Howard for at least 28 months from April 2001 through July 2003.  During this period, she consistently complained of dizziness and balance problems despite Dr. Atkins' opinion that her symptoms would improve.  In June 23, 2003, the ALJ determined that Howard could perform medium work with minimal restrictions.[5]

About 17 days after the ALJ's decision, Dr. Atkins completed two RFC assessments.  In a vestibular dysfunction RFC questionnaire, Dr. Atkins determined that Howard had frequent attacks of imbalance, vertigo, nausea, and visual disturbances.  He also found that stress, exertion, certain kinds of light, and computer monitors were precipitating factors.  Dr. Atkins further determined that Howard would need to take unscheduled breaks lasting several hours per day and would likely be absent from work for at least four days per week.  In a physical RFC assessment, Dr. Atkins noted that Howard suffered from dizziness, cervical pain, imbalance, and hearing loss, as confirmed by objective testing including MRIs, ENGs, VATs, and audiograms, all of which were abnormal.  He found that Howard could walk for one block before needing to rest, could sit/stand for less than two hours, and

---

[5]The ALJ apparently adopted the opinion of two state agency physicians who opined in August and November, 2001, that Howard could perform medium work.

could rarely lift more than ten pounds.  Compared to the evidence before the ALJ, the newly submitted

evidence paints a far more serious picture of Howard's impairments.

The medical records of Dr. Atkins which the AC considered do relate to the relevant period

under consideration by the ALJ.[6]  Dr. Atkins' opinions pertain to the period under consideration by

the ALJ, not solely to the subsequent seventeen days.  According to the regulations, if a claimant

submits evidence that does not relate to the relevant period under consideration, "the Appeals Council

will return the additional evidence to [the claimant] with an explanation as to why it did not accept

the additional evidence and will advise [the claimant] of [her] right to file a new application."  20

C.F.R. § 404.976 (b)(1)(2005).  The AC did not return the AC evidence to Howard.  Rather, the AC

considered the evidence — most likely because the evidence quite obviously *did* relate to the relevant

period.

The AC, however, erred in determining that the Appeals Council evidence "does not provide

a basis for changing the Administrative Law Judge's decision," and in finding no reason even to

review the ALJ's decision.  R. 2 - 3.  As Howard's surgeon and treating physician for over 28 months,

Dr. Atkins' clinical impressions should be highly relevant and probative of Howard's impairments.

After all, Dr. Atkins' opinions relate to the very period considered by the ALJ.  Under the law cited

above, the opinion of a treating physician is entitled to significant weight under most circumstances.

---

[6]The Commissioner argues "[t]he RFC assessments are dated after the ALJ's July [sic - June] 23, 2003 decision and do not relate to the relevent [sic] period before the ALJ's decision." Gov't Brief at 12.  The Commissioner concludes that, by considering such evidence, "[t]he AC did even more than what is required under the regulations." Gov't Brief at 12.  It is unclear whether the Commissioner argues that AC evidence that post-dates the ALJ's decision can *never* relate to the period under consideration before the ALJ's decision.  If that is in fact the Commissioner's argument, this Court rejects it as contrary to the language of her own regulation.

The Commissioner is simply incorrect that the AC evidence is "not material."  Docket No. 15 at 13.

Indeed, such an argument might endanger the Commissioner's credibility with the Court.

The Commissioner also disagrees with Court's summary of the law relating to Appeals

Council evidence, Part III (C) *supra*.  Docket No. 15 at 6 - 8.  The Commissioner both misses the point

and misreads the law.  Without doubt, the Appeals Council may enter an order "denying a request for

review" and may adopt the ALJ's decision as the final decision of the Commissioner.  *See e.g.*, R. 2.

Indeed, the Appeals Council may inform the claimant that it is "denying a request for review" even

where the Appeals Council has in fact  —  as requested  —  engaged in a significant and detailed

review of the applicable laws, regulations, statutes, rulings, the ALJ's decision, the medical records,

hearing transcripts, and the arguments on appeal.  The Appeals Council may state that it is "denying

a request for review" even when it has in fact done a full analysis as to whether the ALJ appears to

have abused his or her discretion, has made a legal error, has not supported his or her decision by

substantial evidence, and has contravened broad policy.

The Appeals Council may even state that it is "denying a request for review" even when it has

in fact received and analyzed new and material evidence, and fully reviewed whether the ALJ's

decision is contrary to the weight of all the evidence now in the record.  In short, the Appeals

Council's final order may adopt the ALJ's decision and language as the final decision of the

Commissioner, and the Commissioner may adopt a regulation says so.  But the Appeals Council

simply cannot review an ALJ's decision on appeal, and then insulate itself from appellate review of

its decisions under 42 U.S.C. § 405 (g) by asserting that it has "found no reason under our rules to

review the Administrative Law Judge's decision [and therefore] we have denied your request for review." *See, e.g.*, R. 2.

This Court disagrees with the Commissioner's argument that the Appeals Council should be viewed as analogous to the Supreme Court of the United States because each body may deny review in any case without articulating any reasons.  Docket No. 15 at 11 - 12, n. 4.  Unlike the Supreme Court, however, the Appeals Council issues decisions that are subject to further judicial review under 42 U.S.C. § 405 (g)  —  courts that will remand if they do not understand the Commissioner's rationale.

The Court therefore remands this case to the Commissioner under sentence four of 42 U.S.C. § 405 (g).[7]  The Court cannot discern the basis for the Commissioner's decision that the Appeals Council evidence  —  which includes the treating physician's opinion as to Howard's impairments and capacity  —  did not warrant a change in the ALJ's decision, or even a review.   The Commissioner's final decision is not supported by substantial evidence, and the Commissioner incorrectly applied the law relevant to Howard's disability claim.  On remand under sentence four, the Commissioner should review the case on a complete record (at the Appeals Council or ALJ level), including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984).

---

[7]Howard also has established:  1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) she did in fact submit the evidence at the administrative level. The Court has discretion to remand also under sentence six, but finds reason to do so because the sentence four remand is fully adequate.

## VI.    **CONCLUSION**

For the reasons stated above, the final decision of the Commissioner is **REVERSED** and

**REMANDED** to the Commissioner under Sentence Four for further proceedings and disposition not

inconsistent with this opinion.  The Clerk should enter a judgment.

**DONE and ORDERED** this 22nd day of July, 2005.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to
All Counsel of Record and *Pro Se* Litigants,
and to:

Mary Ann Sloan, Chief Counsel
Dennis R.  Williams, Deputy Chief Counsel
Paul Jones, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

Susan Roark Waldron
Assistant United States Attorney
400 N. Tampa St., Suite 3200
Tampa, FL              33602

The Honorable Albert D. Tutera
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL             32817

-26-